## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TARAS C. HRYCAK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 20-472-LPS-SRF |
| | ) |
| KILOLO KIJAKAZI,[1] | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant, | ) |
| | ) |

## REPORT AND RECOMMENDATION

### I.    INTRODUCTION

Plaintiff Taras C. Hrycak ("Hrycak") filed this action pursuant to 42 U.S.C. § 405(g) on

April 3, 2020 against the defendant Kilolo Kijakazi, the Acting Commissioner of the Social

Security Administration (the "Commissioner"). (D.I. 1) Hrycak seeks judicial review of the

Commissioner's December 19, 2018 final decision, denying Hrycak's claim for disability

insurance benefits ("DIB") under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§

401–434. Currently before the court are cross-motions for summary judgment filed by Hrycak

and the Commissioner.[2] (D.I. 30; D.I. 32) Hrycak asks the court to reverse the Commissioner's

decision and remand with instructions to find Hrycak disabled. (D.I. 31 at 14) The

Commissioner requests that the court affirm the ALJ's decision. (D.I. 33 at 19) For the reasons

set forth below, I recommend that the court GRANT Hrycak's motion for summary judgment

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021.
Therefore, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Ms. Kijakazi is
substituted as Defendant in place of Andrew Saul.

[2] The briefing for the present motions is as follows: Hrycak's opening brief (D.I. 31), the
Commissioner's combined opening brief in support of his motion for summary judgment and
answering brief in opposition to Hrycak's motion (D.I. 33), and Hrycak's reply brief (D.I. 34).

(D.I. 30), DENY the Commissioner's cross-motion for summary judgment (D.I. 32), and remand the case for further proceedings.

## II. BACKGROUND

### A. Procedural History

Hrycak filed a DIB application on February 23, 2015, alleging a disability onset date of August 3, 2012 due to back, neck, and head injuries. (D.I. 12 at 3-4) Hrycak's date last insured was December 31, 2017. (*Id.* at 4) Hrycak's claims were denied initially in May 2015 and again on reconsideration in July 2015. (*Id.* at 3, 18)

At Hrycak's request, an administrative law judge ("ALJ") held a hearing on June 5, 2017. (D.I. 11 at 56-86) The ALJ issued an unfavorable decision on July 11, 2017, finding that Hrycak was not disabled under the Act because he could perform a reduced range of light work. (D.I. 12 at 37-49) The Appeals Council subsequently granted Hrycak's request for review of the ALJ's decision and remanded the case to the ALJ with instructions to further consider the opinion of Dr. Brian Simon, a psychiatrist who performed a consultative examination on Hrycak. (*Id.* at 58-59)

The ALJ held a second hearing in November 2018 and issued another opinion on December 19, 2018, concluding that Hrycak could perform a reduced range of light work and was not disabled. (D.I. 11 at 14-27, 36-54) The Appeals Council denied Hrycak's request for review of the ALJ's second opinion, rendering that decision the final decision of the Commissioner. (*Id.* at 3-5) Hrycak then brought this civil action challenging the ALJ's decision on April 3, 2020. (D.I. 1) After a series of requests for extension of the briefing schedule (D.I. 21; D.I. 22; D.I. 23; D.I. 24), Hrycak filed a motion for summary judgment on May 10, 2021

(D.I. 30). In accordance with the court-ordered briefing schedule (D.I. 26), the Commissioner filed a cross-motion for summary judgment on June 9, 2021 (D.I. 32).

## B. Medical History

Hrycak was 51 years old on December 31, 2017, the date last insured. (D.I. 11 at 25, 64) Hrycak has a bachelor's degree[3] and has past relevant work as a retail salesperson, an employment specialist, and a job coach. (*Id.* at 64-65; D.I. 15 at 24-26) The ALJ found that Hrycak had the following severe impairments: head injury, migraines, degenerative disc disease of the cervical spine and lumbar spine, neurocognitive disorder, and obesity. (D.I. 11 at 17) Hrycak's history is significant for head injuries sustained while playing college football and in a motor vehicle accident that occurred in 2012. (*Id.* at 44; D.I. 12 at 10) Here, Hrycak challenges the ALJ's consideration of his mental impairments and chronic headaches, with a particular focus on the records of Dr. Simon, Dr. Morris, and Dr. Samuel Romirowsky. (D.I. 31 at 7-10) Hryack also argues that the ALJ erred in determining Hrycak's headaches did not meet the listings of impairments. (*Id.* at 11-14) Because Hrycak does not challenge the ALJ's decision on the remaining severe impairments, the court does not address them here.

### 1. Medical evidence

The relevant medical evidence begins with records from Hrycak's treatment following his auto accident in August 2012. When Hrycak was discharged from the hospital on August 6, 2012 following his auto accident, he was diagnosed with a subdural hematoma and cephalohematoma. (D.I. 16 at 35) His discharge summary notes that he was previously diagnosed with bipolar disorder and stopped taking his medication for the condition five weeks

---

[3] In the ALJ's December 19, 2018 decision, the ALJ represented that Hrycak had a high school education. (D.I. 11 at 19) This is inconsistent with the other evidence of record, including Hrycak's testimony at the hearing before the ALJ. (*Id.* at 64-65)

before the accident, but his medication was reinstated at the hospital. (*Id.* at 36-37) He was prescribed oxycodone for pain and was instructed to avoid strenuous physical activity for four to six weeks. (*Id.* at 37) Treatment notes from a neurological exam in September 2012 indicate that he was suffering from post-concussion syndrome, but he was pleasant, cooperative, alert, conversant, and oriented. (*Id.* at 45)

Treatment notes from Christiana Care Neurology Specialists ("CCNS") in September 2012 indicate that an MRI was performed on Hrycak's brain, and the results unremarkable. (D.I. 16 at 47) Subsequent treatment notes from CCNS between December 2012 and August 2013 consistently reported that Hrycak was alert and oriented, and he exhibited a normal range of short and long-term memory, as well as normal attention, language, and fund of knowledge. (*Id.* at 205-06, 238; D.I. 17 at 433) Nonetheless, Hrycak reported some post-concussion headache symptoms and memory issues. (D.I. 17 at 419, 433)

Hrycak's treatment notes from CCNS continued to report that he was alert and oriented, but beginning in January 2014 and continuing through January 2017, it was noted that Hrycak was exhibiting decreased processing, attention, and memory function. (*Id.* at 456, 465-67, 486-88, 492-95; D.I. 18 at 257-59, 262-64, 267-69) A June 2014 MRI that was performed to evaluate Hrycak's worsening headaches revealed no acute or significant intracranial abnormality, but two possible aneurysms were observed. (D.I. 17 at 471) Hrycak reported irritability, depression, and mood changes beginning in March 2015, and follow-up with Hrycak's psychiatrist was recommended. (D.I. 17 at 440, 492) He experienced a slight improvement in his headaches after receiving Botox treatments beginning in September 2015. (D.I. 18 at 262) Still, Hrycak's treatment notes thereafter consistently reported chronic migraines accompanied by blurred vision, nausea, loss of appetite, and sensitivity to light and sound, which were triggered by stress,

4

rainy or cold weather, or poor sleep. (*Id.* at 280) Hrycak indicated that he experiences migraines at least fifteen days per month for four or more hours per day. (*Id.* at 283)

Hrycak treated with with Dr. Samuel Romirowsky, Ph.D between September 2012 and October 2014. (D.I. 16 at 175-200) Dr. Romirowsky reported that Hrycak experienced sleep impairments, headaches, angry outbursts, irritability, anxiety, and memory problems. (*Id.* at 188-89, 194-95, 197) In February 2013, Hrycak reported a number of manic episodes. (*Id.* at 193) In August 2013, Dr. Romirowsky noted issues with Hrycak's memory function, which was being addressed in twice weekly cognitive rehabilitation sessions at CCNS. (*Id.* at 184-85, 187) Dr. Romirowsky reported that Hrycak's cognitive rehabilitation sessions were interrupted by surgery in November 2013, and at the same time he could not find a psychiatrist. (*Id.* at 181-83) He restarted cognitive rehabilitation on a weekly basis in January 2014, but he continued to experience angry outbursts. (*Id.* at 181) In October 2014, Dr. Romirowsky indicated that Hrycak was experiencing memory problems, headaches related to his aneurysms, and episodic angry outbursts, but he discontinued cognitive rehabilitation. (*Id.* at 175)

Between June 2014 and March 2015, treatment notes from Focus Behavioral Health ("FBH") described Hrycak's history of significant symptoms of bipolar disorder, but he was calm, attentive, and fully communicative and presented with normal cognitive function, attention, and memory. (D.I. 18 at 180-82, 184, 186, 189, 191) In March 2015, Hrycak began experiencing depression and angry outbursts, and he complained that his headache medication made him foggy. (*Id.* at 189, 191) Nonetheless, he continued to present as calm, cooperative, and attentive during the course of the examination, and he exhibited normal cognitive functioning. (*Id.*)

In October 2014, Hrycak reported to Stoney Batter Family Medicine with complaints of

5

daily headaches. (D.I. 18 at 9) Findings upon examination showed that Hrycak's mood and affect were normal, and a neurological exam yielded normal results. (*Id.* at 9-10)

About seven months after Hrycak's date last insured, he was admitted for inpatient care as a result of "[d]isorganized thought process, paranoia, auditory hallucinations commanding to hurt himself and others." (D.I. 18 at 312) His concentration, attention span, and memory were impaired. (*Id.* at 313) He was diagnosed with schizoaffective disorder, bipolar type, and his prescription for Lamictal was reinstated after receiving education regarding the importance of adhering to medication. (*Id.* at 313-15)

Following his hospitalization, Hrycak returned to psychiatrist Andrew W. Donohue, DO, who had last treated Hrycak six years prior. (D.I. 18 at 318) Dr. Donohue's notes indicate that Hrycak had been manic and psychotic, but during his early August 2018 visits, Hrycak showed no signs of depression, elevated mood, or hallucinations, although he did exhibit anxiety. (*Id.* at 318, 320) Dr. Donohue found Hrycak's cognitive functioning and memory to be intact. (*Id.* at 320) He diagnosed Hrycak with bipolar disorder with psychotic features, and recommended increasing his dosage of Lamictal. (*Id.*) Self-report screeners reflected that Hrycak suffered mild anxiety and moderate depression. (*Id.* at 322) Dr. Donohue noted Hrycak's history of headaches and memory problems. (*Id.* at 324)

On August 24, 2018, Dr. Donohue reported that Hrycak had experienced a "significant complication," with worsening depressive symptoms. (D.I. 18 at 326) Dr. Donohue adjusted his medications. (*Id.* at 327) The following month, Hrycak was late for his visit and complained of forgetfulness and mild depression. (*Id.* at 330) Upon examination, Hrycak's cognitive functioning and memory remained intact. (*Id.*) Hrycak engaged in therapy to develop coping skills and self-calming techniques. (*Id.* at 396)

6

## 2. Medical opinions

In March 2013, psychologist Terri Morris, Ph.D performed a neuropsychological evaluation and found mild impairments in Hrycak's sustained attentional focus, cognitive processing speed, memory, executive functioning, and emotional adjustment. (D.I. 16 at 123-30) Hrycak exhibited normal findings in orientation, auditory attention span, speech and auditory comprehension, expressive speech fluency, and verbal fluency. (*Id.*) Dr. Morris diagnosed Hrycak as having a traumatic brain injury with resulting physical, neurocognitive, and emotional changes attributable to the 2012 car accident. (*Id.* at 129) Dr. Morris opined that Hrycak's deficits in memory and executive function have prevented him from returning to work. (*Id.*)

Dr. Morris evaluated Hrycak again on July 11, 2014, concluding that his neuropsychological profile remained abnormal consistent with the findings of the first evaluation. (D.I. 16 at 131-41) Specifically, Dr. Morris opined that Hrycak exhibited deficits in his cognitive processing speed, memory, and executive functions. (*Id.* at 139) Dr. Morris also found mild to moderate depression and anxiety. (*Id.* at 140) Hrycak again exhibited normal findings in orientation, auditory attention span, speech and auditory comprehension, expressive speech fluency, and verbal fluency. (*Id.*) Despite treatment, Dr. Morris noted that Hrycak exhibited ongoing problems in emotional regulation and cognitive functioning. (*Id.*) Hrycak reported that his headaches had improved somewhat since he was prescribed Topamax. (*Id.* at 132)

On April 8, 2015, psychologist Brian Simon, Psy. D performed a consultative psychological examination on Hrycak. (D.I. 18 at 152-161) Dr. Simon administered a memory functioning assessment, which revealed mild to moderate problems with immediate and short-term memory, low average scores in auditory and visual working memory, and extremely low

scores in visual and delayed memory. (*Id.* at 158-59) Dr. Simon diagnosed Hrycak with a mild neurocognitive disorder, stable bipolar disorder, and an adjustment disorder with depressed mood. (*Id.* at 160) He opined that Hrycak was capable of maintaining concentration, focus, and attention and can understand and carry out simple instructions. (*Id.*) However, he also noted that Hrycak may have difficulty remembering instructions, making decisions, adapting to different circumstances, interacting and relating with others, exercising judgment and common sense, and persisting for a normal work period. (*Id.* at 160-61) Dr. Simon recommended outpatient psychiatric treatment for his depressive symptoms. (*Id.* at 161)

Hrycak's case was evaluated by two state agency physicians. On May 16, 2015, psychiatrist Christopher King, Psy. D opined that Hrycak no restrictions on activities of daily living, no difficulties in maintaining concentration, persistence or pace, and only mild difficulties in maintaining social functioning. (D.I. 12 at 12) Dr. King found Hrycak's statements regarding his memory issues to be partially credible, noting that Hrycak performed within normal limits across most cognitive tasks in his first exam, and the lower scores resulting from memory testing performed the following year were dismissed as invalid. (*Id.*) Dr. King opined that Hrycak's bipolar disorder was in full remission, and there was no evidence of any significant mental limitations. (*Id.*)

On September 28, 2015, Hrycak's case was assessed by state agency psychologist Carlene Tucker, Ph.D. (D.I. 12 at 29) Dr. Tucker concluded that Hrycak showed significant improvement, with mild signs of depression and anxiety, average ranges of concentration and attention, and low average to average ranges of memory. (*Id.*) Dr. Tucker found Hrycak's mental conditions to be non-severe. (*Id.*)

8

## C. Hearing Before the ALJ

### 1. Hrycak's Testimony

At the first administrative hearing on June 5, 2017, Hrycak testified that he previously worked as an employment specialist. (D.I. 11 at 64) He stopped working in 2012 after being involved in a car accident in which he suffered a concussion and experienced a brain bleed. (*Id.* at 67) Hryack explained that he has problems with memory, multitasking, sleeping, and controlling his emotions since the accident. (*Id.* at 68-69) He experiences chronic daily headaches, with severe, debilitating headaches occurring two or three times a week. (*Id.* at 73-74)

Hrycak testified that he was diagnosed with bipolar disorder in 2005 and was hospitalized for the condition for eight days. (D.I. 11 at 67) Hrycak stated that he is controlling the condition with medication, which has prevented him from becoming delusional. (*Id.* at 73) Hrycak's wife testified that the medication reduces the severity of his manic and depressive episodes, but he continues to have episodes of anger, mania, and depression. (*Id.* at 77)

At the second administrative hearing on November 14, 2018, Hrycak testified that he had been hospitalized for eight days with bipolar mania in July 2018, after his date last insured. (D.I. 11 at 40-41) After his hospitalization, Hrycak stated that he began treating with a psychiatrist. (*Id.* at 45) Hrycak also represented that he has continued to experience migraines four to five days per week despite treatment, causing him to rest in a dark room for most of the day. (*Id.* at 41) He testified that he could sometimes drive his daughter to school, but his wife and mother help on days when he is experiencing symptoms and cannot drive. (*Id.* at 45-46)

9

## 2. Vocational Expert Testimony Before the ALJ

At the second administrative hearing in November 2018, the ALJ posed the following

hypothetical to the vocational expert Amanda Ortman ("the VE"):

> What I'd like you to do is to assume an individual of the claimant's age,
> education, and work history who can perform work at the light exertional level,
> who can frequently climb ramps and stairs, and occasionally ladders, ropes, and
> scaffolds, who can occasionally balance, stoop, kneel, crouch, and crawl, who can
> have occasional exposure to extreme cold, vibration, and hazards, and who can
> perform simple unskilled tasks with no fast paced or strict production
> requirements with occasional changes in the work setting, occasional decision
> making, and occasional interaction with coworkers and with public.

(D.I. 11 at 50) In response to the ALJ's hypothetical, the VE testified that such a hypothetical

individual would not be able to perform Hrycak's past work as an employment specialist or a

sales representative. (*Id.* at 49-50) However, the ALJ indicated that such a hypothetical

individual could perform work as a small parts assembler, an electronics worker, or a mail clerk.

(*Id.* at 50-51) The ALJ then modified the hypothetical to include an additional limitation: only

sedentary jobs, with occasional climbing of ramps and stairs. (*Id.* at 51) The VE testified that

there would be work available as a document preparer, a bench hand assembler, or a check

weigher. (*Id.*) The ALJ once again modified the hypothetical to include the limitation that the

hypothetical individual would be off task 15% or more of the workday as a result of their

impairments. (*Id.*) The VE testified that, under those circumstances, the hypothetical individual

would not be employable. (*Id.* at 51-52)

Hrycak's counsel then asked the VE to consider the hypothetical individual with certain

additional limitations based on the evaluation of Dr. Simon: the individual has a moderately

severe impairment in his ability to sustain work performance and attendance in a normal work

setting, and the individual has a moderately severe impairment in their ability to cope with

pressures of ordinary work and meeting quality and production norms. (D.I. 11 at 52) Assuming

10

that such a hypothetical individual would be off task about 15% of the time as a result of these moderately severe impairments, the VE testified that the hypothetical individual would not be able to maintain employment. (*Id.* at 52-53)

Hrycak's counsel also asked whether a hypothetical individual who needed to lie down in the dark for approximately four hours on three workdays due to migraine headaches would be able to maintain employment. (D.I. 11 at 53) The VE represented that such an individual would not be able to perform any jobs in the economy. (*Id.* at 54)

### D. The ALJ's Findings

Based on the factual evidence in the record and the testimony by Hrycak and the VE, the ALJ determined that Hrycak was not disabled under the Act for the relevant time period from August 3, 2012 through December 31, 2017, the date last insured. (D.I. 11 at 26) The ALJ found, in pertinent part:

1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2017.

2. The claimant did not engage in substantial gainful activity during the period from his alleged onset date of August 3, 2012, through his date last insured of December 31, 2017 (20 CFR 404.1571 *et seq*.).

3. Through the date last insured, the claimant had the following severe impairments: head injury, migraines, degenerative disc disease of the cervical spine and lumbar spine, neurocognitive disorder, and obesity (20 CFR 404.1520(c)).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526).

5. After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he can frequently climb ramps and stairs and occasionally climb ladders, ropes, and scaffolds. He can occasionally balance, stoop, kneel, crouch, and crawl. He can have occasional

11

exposure to hazards, extreme cold, and vibration. He can perform simple, unskilled tasks with no fast pace or strict production requirements. There can be occasional changes in the work setting, occasional decision-making, and occasional interaction with coworkers and the public.

6. Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on September 18, 1966, and was 51 years old, which is defined as an individual closely approaching advanced age, 50-54, on the date last insured (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569a).

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from August 3, 2012, the alleged onset date, through December 31, 2017, the date last insured (20 CFR 404.1520(g)).

(D.I. 11 at 16–26)

## III.   STANDARD OF REVIEW

Judicial review of the ALJ's decision is limited to determining whether substantial

evidence supports the decision. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Biestek v. Berryhill*, 139 S.

Ct. 1148, 1154 (2019). "Substantial evidence means enough relevant evidence that 'a reasonable

mind might accept as adequate to support a conclusion.'" *Pearson v. Comm'r of Soc. Sec.*, 2020

WL 7054447, at \*2 (3d Cir. Dec. 2, 2020) (quoting *Biestek*, 139 S.Ct. at 1154). When applying

the substantial evidence standard, the court "looks to an existing administrative record and asks

12

whether it contains 'sufficien[t] evidence' to support the agency's factual determinations."
*Biestek*, 139 S. Ct. at 1154 (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).
The threshold for satisfying the substantial evidence standard is "not high[,]" requiring "more
than a mere scintilla" of evidence. *Id.*

## IV.    DISCUSSION

### A.    Disability Determination Process

Title II of the Act affords insurance benefits to people who contributed to the program
and who have a disability. *See Pearson*, 2020 WL 7054447, at *2 (citing 42 U.S.C. § 423(a)(1)).
A disability is the "inability to engage in any substantial gainful activity by reason of any
medically determinable physical or mental impairment which can be expected to result in death
or which has lasted or can be expected to last for a continuous period of not less than 12
months." 42 U.S.C. § 423(d)(1)(A). A claimant is only disabled if his impairments are so severe
that he is unable to do his previous work or engage in any other kind of substantial gainful work
existing in the national economy. *Id.* § 423(d)(2)(A); *Barnhart v. Thomas*, 540 U.S. 20, 21–22
(2003). To qualify for disability insurance benefits, a claimant must establish that he was
disabled prior to the date he was last insured. 20 C.F.R. § 404.131 (2016); *Zirnsak v. Colvin*,
777 F.3d 607, 611–12 (3d Cir. 2014).

The Commissioner must perform a five-step analysis to determine whether a person is
disabled. *See* 20 C.F.R. §§ 404.1520, 416.920; *Plummer v. Apfel*, 186 F.3d 422, 427–28 (3d Cir.
1999). If the Commissioner makes a finding of disability or non-disability at any point in the
sequential process, the Commissioner will not review the claim further. 20 C.F.R. §§
404.1520(a)(4), 416.920(a)(4). At step one, the Commissioner determines whether the claimant
is engaged in any substantial gainful activity. *See id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If

13

the claimant is not engaged in substantial gainful activity, step two requires the Commissioner to determine whether the claimant is suffering from a severe impairment or a severe combination of impairments. *See id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

If the claimant's impairments are severe, at step three, the Commissioner compares the claimant's impairments to a list of impairments that are presumed severe enough to preclude any gainful work. *See id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *Plummer*, 186 F.3d at 428. When a claimant's impairment or its equivalent matches a listed impairment, the claimant is presumed disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If a claimant's impairment, either singly or in combination, fails to meet or medically equal any listing, the analysis continues to step four and five. *See id.* §§ 404.1520(e), 416.920(e).

At step four, the ALJ considers whether the claimant retains the residual functional capacity ("RFC") to perform her past relevant work. *See id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv); *Plummer*, 186 F.3d at 428. A claimant's RFC "measures the most she can do despite her limitations." *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014) (quoting 20 C.F.R. § 404.1545(a)(1)) (internal quotations and alterations omitted). The claimant bears the burden of demonstrating the inability to return to past relevant work. *See Plummer*, 186 F.3d at 428

If the claimant is unable to return to past relevant work, at step five, the Commissioner must demonstrate that the claimant's impairments do not preclude her from adjusting to any other available work. *See* 20 C.F.R. §§ 404.1520(g), 416.920(g); *Plummer*, 186 F.3d at 428. In other words, the Commissioner must prove that "there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and [RFC]." *Plummer*, 186 F.3d at 428. The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether

14

he or she is capable of performing work and is not disabled. *See id.* The ALJ often seeks the

VE's assistance in making this finding. *See id.*

## B. Whether the ALJ's Decision is Supported by Substantial Evidence[4]

Hrycak's motion for summary judgment focuses on two overarching issues: (1) the ALJ's

failure to consider relevant evidence of Hrycak's mental impairments; and (2) the ALJ's alleged

error in determining that Hrycak's impairments relating to his chronic headaches did not meet

the listings.[5]

### 1. Evidence of Mental Impairments

Hrycak argues that the ALJ's consideration of his mental impairments was deficient in

four respects. First, Hrycak highlights the unexplained disparity between the ALJ's assignment

---

[4] In his reply brief, Hrycak challenges the timeliness of the Commissioner's cross-motion for summary judgment because the Court's April 20, 2021 oral order permitted the Commissioner to file only an answering brief to Plaintiff's motion for summary judgment by June 10, 2021. (D.I. 34 at 1; D.I. 26) The standard briefing procedure in Social Security appeals in this District is as follows: after the disability claimant files a motion for summary judgment and associated opening brief, the Commissioner responds to a disability claimant's motion for summary judgment with his or her own cross-motion for summary judgment, which is accompanied by a combined opening and answering brief. *See, e.g.*, *Schoengarth v. Barnhart*, 416 F. Supp. 2d 260, 263 (D. Del. 2006). Briefing is deemed complete when the disability claimant submits a combined answering and reply brief. *Id.* The Commissioner's filings in this case comply with the standard briefing procedures in this District for Social Security disability appeals, and the Commissioner's filings were timely filed on June 9, 2021, one day prior to the deadline set by the Court in the April 20, 2021 oral order. (D.I. 26) Thus, the Court rejects Hrycak's request to treat the Commissioner's brief only as an answering brief. By way of observation, the Court notes that Hrycak challenges the timeliness of the Commissioner's briefing after Hrycak himself requested extensions of the briefing schedule no less than four times. (D.I. 21; D.I. 22; D.I. 23; D.I. 24)

[5] Hrycak also states in a conclusory manner that "[t]he ALJ failed to give adequate weight to the opinion of long time treating physician Bruce Rudin, MD. The opinion is supported by the medical record." (D.I. 31 at 14) Neither the answering brief nor the reply brief addressed Hrycak's challenge to the ALJ's consideration of Dr. Rudin's opinion. (D.I. 33; D.I. 34) "The court cannot take such a conclusory and undeveloped assertion and transform it into a substantive argument on Plaintiff's behalf without improperly becoming an advocate for Plaintiff." *Ray v. Saul*, 2020 WL 5203493, at *10 (N.D. Ohio Sept. 1, 2020).

of "great weight" to Dr. Simon's opinion in his July 11, 2017 decision, and his assignment of "little weight" to the same exact opinion in his December 19, 2018 decision. (D.I. 31 at 7-8) Second, Hrycak argues that the ALJ failed to consider the treatment records of Dr. Romirowsky, who treated Hrycak for twenty-three consecutive months during the relevant time period. (*Id.* at 8-10) Third, Hrycak alleges that the ALJ failed to consider more recent clinical records of Hrycak's mental impairments. (*Id.* at 10) Fourth, Hrycak contends that the ALJ improperly rejected statements of fact witnesses which were offered after the date last insured, despite the fact that those statements described observations made during the relevant time period. (*Id.* at 10-11) The court addresses each of these arguments in turn.

### (a) Weight given to Dr. Simon's opinion

The ALJ evaluated the same opinion by Dr. Simon on two separate occasions and reached different conclusions on each of those occasions. In the July 6, 2017 decision, the ALJ afforded Dr. Simon's opinion "great weight," finding that the opinion of a moderately severe degree of impairment was consistent with the findings in Dr. Simon's evaluation and that Hrycak's memory-related and psychiatric problems make it difficult for Hrycak to make decisions, adapt to changing circumstances, interact with others, exercise judgment, and persist for a normal work period. (D.I. 12 at 46-47) In contrast, the ALJ assigned "little weight" to Dr. Simon's opinion in the December 19, 2018 decision, finding that Dr. Simon's opinion of moderately severe limitations in sustained work performance and attendance was inconsistent with Dr. Simon's findings that Hrycak had good attention, concentration, and judgment and the capacity to persist for a normal work period with only "some trouble." (D.I. 11 at 23-24) In the latter decision, the ALJ offered no acknowledgement of his earlier findings regarding Dr.

16

Simon's opinion, let alone an explanation for how and why the change to his earlier opinion was made.

The procedural posture of this case is somewhat unusual due to the remand by the Appeals Council. Accordingly, case law addressing apparent inconsistencies between multiple decisions by the same ALJ in the same case is sparse, and none was cited here. Under these circumstances, the court is guided by the general and well-established principle that an ALJ is obligated to explain the reasoning behind the conclusions reached when the record contains inconsistences. *See Fargnoli v. Massanari* , 247 F.3d 34, 42 (3d Cir. 2001). Here, the inconsistency is of the ALJ's own making, and it warrants explanation to avoid the appearance that the ALJ conformed his reasoning to achieve a predetermined result. Although the ALJ was not bound by the earlier decision that was never made final,[6] the ALJ must explain what caused his assessment of the very same evidence to change from one decision to the next. Accordingly, I recommend that the case be remanded for clarification of the ALJ's shifting conclusions regarding the opinion of Dr. Simon.

---

[6] Hrycak argues that the ALJ is bound by his conclusions in the earlier decision under the doctrine of collateral estoppel and 20 C.F.R. § 404.950(f). (D.I. 31 at 7-8) Hrycak offers no authority to support this application of 20 C.F.R. § 404.950(f). Generally speaking, collateral estoppel applies only to final decisions. *See, e.g.*, *Galderma Labs. Inc. v. Amneal Pharms., LLC*, 921 F. Supp. 2d 278, 280 (D. Del. 2012) (stating that a party asserting collateral estoppel must prove, among other things, that "the issue was actually decided on the merits and the decision was final and valid"). This principle extends to applications of 20 C.F.R. § 404.950(f). *See Hoffman v. Colvin*, 2014 WL 2892695, at *1 (E.D. Cal. June 25, 2014) (concluding that the ALJ's 2009 final decision on the claimant's DIB application "does not provide a legally adequate basis for setting aside the Commissioner's earlier [final SSI] decision in November 2002 that the plaintiff continued to be disabled."). Here, the ALJ's 2017 decision did not become final because it was remanded by the Appeals Council. Accordingly, the analysis and conclusions on this issue are not based on an application of collateral estoppel pursuant to 20 C.F.R. § 404.950(f).

17

### (b) Failure to consider Dr. Romirowsky's records

Remand is also warranted due to the ALJ's failure to consider Dr. Romirowsky's

treatment records. *See Schwartz v. Berryhill* , C.A. No. 16-573-MN, 2019 WL 117987, at \*7-8

(D. Del. Jan. 2019) (concluding that ALJ's decision was not based on substantial evidence where

the ALJ failed to consider medical records of claimant's rheumatologist). The Commissioner

does not dispute that the ALJ failed to consider the treatment records of Dr. Romirowsky. (D.I.

33 at 14) The law is well-established that "[t]he ALJ must consider all the evidence and give

some reason for discounting the evidence she rejects." *Plummer v. Apfel*, 186 F.3d 422, 429 (3d

Cir. 1999). Otherwise, "the reviewing court cannot tell if significant probative evidence was not

credited or simply ignored." *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981); *see Seifert v.

Astrue*, 2011 WL 4527396, at \*3 (W.D. Pa. Sept. 28, 2011) (remanding case where ALJ failed to

consider mental health treatment notes from the plaintiff's psychiatrist).

The ALJ's failure to consider Dr. Romirowsky's treatment notes is not harmless error

because Dr. Romirowsky's records cover a span of nearly two years of treatment on a monthly

basis during the relevant time frame. (D.I. 16 at 175-200); *see Epps v. Colvin*, 2014 WL 807957,

at \*2 (W.D. Pa. Feb. 28, 2014) (faulting ALJ for discrediting or failing to consider treatment

notes establishing claimant's longitudinal mental health history). These treatment notes offer a

contemporaneous view of the intensity and persistence of Hrycak's symptoms. (*Id.*) According

to Hrycak, Dr. Romirowsky's records confirm Hrycak's complaints of pain, agitation, sleep

deficiency, frustration, depression, and outbursts of anger and establish that Hrycak experienced

diminished memory. (D.I. 31 at 8-9) To the extent that Dr. Romirowsky's treatment notes are

consistent with the opinions of Dr. Simon and Dr. Morris, the ALJ's assessment of those

opinions may be impacted by consideration of Dr. Romirowsky's notes. Similarly, the ALJ's

18

determination that Hrycak did not have a "marked limitation" under Listing 11.02D with respect to his migraines was made without consideration of Dr. Romirowsky's notes reflecting persistent and severe headaches that were largely unresponsive to treatment.[7] (D.I. 11 at 17) Therefore, remand for further consideration of Dr. Romirowsky's treatment records is warranted.

### (c) Failure to consider post-DLI records

Hrycak also alleges that the ALJ failed to consider the more recent treatment record, including notes from his psychiatrist, Dr. Donahue and records from his hospitalization for bipolar disorder with psychotic features, which post-date Hrycak's date last insured. (D.I. 31 at 10) Hrycak does not further elaborate on this alleged deficiency, which is not addressed in the Commissioner's responsive brief or Hrycak's reply brief.

Although the ALJ acknowledged receiving this evidence "per the request of the remand" from the Appeals Council, he did not consider the medical evidence post-dating Hrycak's date last insured that substantiated his hospitalization for bipolar disorder and his treatment with Dr. Donahue. (D.I. 11 at 20) ("The submitted evidence from the date of the last hearing through the date last insured does not support any limitations greater than the above residual functional capacity."). "Courts have held that medical evidence generated after the date last insured is only relevant to the extent it is reasonably proximate in time or relates back to the period at issue." *Lucent v. Comm'r of Soc. Sec.*, 2020 WL 2217269, at *6 (W.D. Pa. May 7, 2020). Here, the evidence is dated less than a year after Hrycak's date last insured, and it relates directly to the same mental impairment that was discussed throughout his medical records during the relevant time period before his date last insured. (D.I. 18 at 312-32, 396-404) On remand, I recommend

---

[7] *See* § IV.B.2 for further discussion of Listing 11.02D.

that the ALJ consider the post-DLI evidence in the context of Hrycak's diagnosed bipolar disorder during the relevant time period.

**(d) Weight given to statements of fact witnesses**

Hrycak also faults the ALJ for failing to consider the relevant statements of fact witnesses made after the date last insured. (D.I. 31 at 10-11) Social Security Ruling (SSR) 06-03p provides that, when considering the statements of lay witnesses, ALJs should consider "such factors as the nature and extent of the relationship, whether the evidence is consistent with other evidence, and any other factors that tend to support or refute the evidence." *See Zirnsak v. Colvin*, 777 F.3d 607, 612 (3d Cir. 2014) (quoting SSR 06-03p, 2006 WL 2329939, at \*2 (S.S.A. Aug. 9, 2006)). Here, the ALJ explained that he gave it little weight because the statements "reflect observations of the claimant's current level of functioning, and not necessarily as of the date last insured."(D.I. 11 at 24-25)

The ALJ's conclusion on this point is inconsistent with the content of the nonmedical witness statements. For instance, Hrycak's wife submitted a November 1, 2018 letter in which she explained that Hrycak's memory issues are significant by describing a time when he forgot to pick up their daughter from school. (D.I. 18 at 406) This is consistent with her testimony during the June 5, 2017 hearing before the ALJ, which occurred prior to the date last insured, when she recounted that Hrycak had forgotten to pick up their daughter from school. (D.I. 11 at 75) Hrycak's stepson described the aftermath of his 2012 car accident and suggested that it was the accident in 2012 that "seems to have exacerbated the symptoms associated with his bipolar disorder." (D.I. 18 at 408) These statements are directly focused on the relevant time period between the claimed disability onset date and the date last insured. Because the ALJ "cannot

20

reject evidence for an incorrect or unsupported reason," the ALJ should reevaluate the statements of lay witnesses on remand. *Zirnsak*, 777 F.3d at 612.

## 2. Listing Analysis

Finally, Hrycak argues that the ALJ erred in determining that Hrycak's impairments resulting from his chronic headaches did not meet the listings of impairments. (D.I. 31 at 11) According to Hrycak, his chronic migraines are equivalent to Listing 11.02D, which is titled "dyscognitive seizures," but may be applied to comparable symptoms stemming from chronic migraines. (*Id.* at 12); *see Jandt v. Saul*, 2021 WL 467200, at *10 (W.D. Ky. Feb. 9, 2021). In response, the Commissioner contends that the ALJ properly considered all five of the relevant categories under Listing 11.02D and determined that Hrycak had no marked limitations based on the evidence of record. (D.I. 33 at 17)

The ALJ concluded that Hrycak's migraines did not medically equal Listing 11.02D because he had unremarkable MRI results, his headaches improved with treatment, and "the evidence does not demonstrate marked limitation in understanding, remembering, or applying information, as described in detail in the 'paragraph B' findings below." (D.I. 11 at 17)  The ALJ did not mention the other categories of Listing 11.02D, including interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing oneself. (*Id.*)  As previously stated, the ALJ's analysis did not focus on treatment records documenting Hrycak's nausea, photophobia, phonophobia, the need to lie down in a quiet dark room, the limited effectiveness of the treatments, or the intensity, duration, frequency, and type of headaches Hrycak experienced. *See* § IV.B.1.b, *supra*; *see also Jandt*, 2021 WL 467200, at *10.

Moreover, the ALJ does not consider Hrycak's limitations in understanding, remembering, or applying information in the context of his migraines, instead relying on a cross-

21

reference to the analysis performed in connection with Hrycak's mental impairments under Listing 12.02. (D.I. 11 at 17-18) This same approach has been rejected by other courts. *See Jandt*, 2021 WL 467200, at \*10 ("To the extent Defendant suggests consideration of the ALJ's 'paragraph B criteria' findings for Listing 12.04, the Court concludes these findings are irrelevant because they assess the limitations imposed by Plaintiff's depression, not her migraine headaches."). An ALJ is not required to explain why a claimant fails to satisfy every different section of a Listing only if the ALJ's evaluation of the evidence is otherwise adequate. *See Veronica M. v. Saul*, 2020 WL 4730980, at \*6 (E.D. Wash. June 10, 2020). Here, the ALJ's findings do not address how Hrycak's migraine-specific symptoms impact his ability to function, and the ALJ's findings are based on an incomplete assessment of the record. Because the ALJ has not provided a sufficient explanation of his unfavorable finding of medical equivalence at step three with respect to Hrycak's migraine headaches, I recommend that the court grant Hrycak's motion and remand to the ALJ for further proceedings.

## V. CONCLUSION

For the foregoing reasons, I recommend that the court grant Hrycak's motion for summary judgment (D.I. 30), and deny the Commissioner's cross-motion for summary judgment (D.I. 32). I further recommend that the court remand the case to the Commissioner with instructions to:

1) Explain the discrepancies in the weight given to Dr. Simon's opinion;

2) Consider the treatment records of Dr. Romirowsky;

3) Consider the medical evidence of record dated after Hrycak's date last insured;

4) Re-assess the statements of fact witnesses proffered after Hrycak's date last insured; and

5) Revisit the analysis of Hrycak's migraines under Listing 11.02D.

22

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The objection and responses to the objections are limited to ten (10) pages each. The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the District Court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006*)*; *Henderson v. Carlson*, 812 F.2d 874, 878–79 (3d Cir. 1987).

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated: August 16, 2021

Sherry R. Fallon
United States Magistrate Judge